UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| FAIRMONT CASH MGMT., LLC d/b/a, § <br> CASH COW PAWN § <br> § <br> Plaintiff, § <br> VS. § <br> § <br> TANARRA JAMES, DIRECTORY OF § <br> INDUSTRY OPERATIONS BUREAU OF § <br> ALCOHOL, TOBACCO, FIREARMS, § <br> AND EXPLOSIVES § <br> § <br> Defendant. § | CIVIL ACTION NO. 3:15-CV-077 |

**MEMORANDUM OPINION AND ORDER**

Fairmont Cash Mgmt, LLC d/b/a Cash Cow ("Cash Cow") filed a Petition for Judicial Review in this Court on April 10, 2015, requesting *de novo* judicial review pursuant to 18 U.S.C. § 923(f)(3) of the administrative decision by Tanarra James, the Director of Industry Operations for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") revoking its federal firearms license. Dkt. 1. Cash Cow contends that the ATF improperly revoked its license to sell firearms, and it seeks injunctive relief and judgment in its favor reinstating its license, as well as its costs and reasonable attorney's fees. *Id*.

The ATF filed an answer and then moved for summary judgment. Dkt. 14, 18. Cash Cow has responded to that motion, Dkt. 33, and the motion is now ripe for consideration. After due consideration of the Motion, the Response, and the pleadings of the parties, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

The Gun Control Act of 1968 (the "GCA") requires every person who engages in business as an importer, manufacturer, or dealer in firearms or ammunition to be properly licensed by the Secretary of the Treasury. *United States v. Shirling*, 572 F.2d 532, 533 (5th Cir. 1978); 18 U.S.C. § 923(a). Further, businesses that are licensed to sell firearms "must create and maintain records of all firearms transactions, including the name, age, and residence of each individual who purchases a firearm." *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 715 (5th Cir. 2013).

Under the GCA, "certain classes of people—felons, drug addicts, and the mentally ill, to list a few—may not purchase or possess any firearm. And to ensure they do not, § 922(d) forbids a licensed dealer from selling a gun to anyone it knows, or has reasonable cause to believe, is such a prohibited buyer." *Abramski v. United States*, 134 S. Ct. 2259, 2263, 189 L. Ed. 2d 262 (2014). Among other requirements, the GCA requires that the licensed dealer verify the purchaser's identity by examining a valid photo ID and having the purchaser fill out a form, known as "Form 4473," providing identifying information and affirming that the purchaser is not disqualified from buying the gun. *Id*. Form 4473 requires several different types of very specific: the name, address, sex, race, date of birth, and place of birth of the buyer; the buyer's identification number, type of identification, and identification state; the date and location of the sale; and the manufacturer, importer, type, model, caliber, and serial number of the firearm. *Id*. The form must be signed and dated by the buyer, and the buyer must swear that he or she meets the eligibility requirements for purchasing the firearm. *Id*. at 2263-64; *see also* 27

C.F.R. §§ 478.96(b), 478.124(a). Form 4473 also informs the purchaser that they are prohibited from buying the firearm on someone else's behalf. *Abramski*, 134 S. Ct. at 2263. Finally, the dealer must then submit the purchaser's information to the National Instant Background Check System ("NICS") to determine whether the purchaser is, for any reason, disqualified from owning a firearm. *Id*. (citing 18 U.S.C. § 922(t)(1)(A)–(B)).

The GCA also requires licensed dealers to "maintain such records of ... disposition of firearms at [their] place of business for such period, and in such form, as the Attorney General may by regulations prescribe." 18 U.S.C. § 923(g)(1)(A)). The federal government, through the ATF, initially inspects licensed firearm businesses to ensure the businesses meet initial qualifying standards and then conducts additional inspections to ensure the licensed dealers continue to comply with federal firearms license regulations. *See* 18 U.S.C. § 923(g); *Moreno v. Bureau of Alcohol, Tobacco, Firearms, Explosives*, 113 F. Supp. 3d 916, 918 (W.D. Tex. 2015). Government investigators also conduct unannounced compliance inspections to examine the dealer's records and inventory firearms. *Id*.

Cash Cow is a pawn shop located in Alvin, Texas. Cash Cow's sole member and President is Derek Munz. Munz has been in the pawn shop business since 1986, and at one time specialized in creating and maintaining computer software that assisted pawn shops in complying with ATF and federal firearms license ("FFL") requirements. At one point, Munz operated as many as thirteen pawn shops, "handling all the guns, the [thirteen] FFLs," and any ATF audits at each site. Munz purchased Cash Cow in 2007, and Cash Cow was then issued an FFL in 2007 that listed Munz as the "Responsible

Person." In 2010, the ATF conducted a compliance inspection of Cash Cow and recorded no violations.

In early 2013, however, the ATF received an anonymous tip that Cash Cow was selling firearms without the proper background and compliance checks. The ATF sent a confidential informant into the store. On February 7, 2013, the confidential informant purchased a Berretta pistol from Cash Cow's store manager, Nelson Alonso, even though the informant informed Alonso that he was a convicted felon and not a citizen of the United States. In order to sell the gun, Alonso ran the required criminal background check through NCIS by using a misspelling of the purchaser's name.

On February 11, 2013, the confidential informant again returned to Cash Cow. Even though the background check did not clear, and even though Alonso had been told that that the informant was a felon, Alonso sold him a rifle by falsifying another customer's paperwork. On February 21, 2013, the informant again went to Cash Cow, this time with another confidential informant. Alonso again sold three guns to the informant, improperly allowing the second informant to fill out the paperwork and to falsely state that she was the one purchasing the firearms.

On February 28, 2013, the ATF obtained and executed a search warrant for Cash Cow's premises. At that time, the ATF seized two years' worth of Form 4473s, dating back to February 28, 2011. Munz was informed of the allegations against Alonso, and he was made aware of the ATF's ongoing investigation. Despite Alonso's subsequent indictment, Cash Cow was allowed to continue operating and selling firearms throughout 2013 and into 2014.

In February 2014, ATF agents conducted a compliance inspection to review Cash Cow's documentation and procedures in the year since Alonso's departure. ATF agents found failures to properly document and report firearms sales dating back to 2011. These failures included one instance, in March 2013, where Cash Cow failed to timely report the sale of two or more semiautomatic rifles to the same person, in violation of 18 U.S.C. § 923(g)(5)(A) and 27 C.F.R. § 478.126. Similarly, from 2011 through December 2013, Cash Cow failed to timely report twelve instances where it sold two or more pistols or revolvers to the same purchaser, violating 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. § 478.126a. Cash Cow also failed to properly record and track its inventory on seven occasions, violating 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e). The ATF found also multiple problems with the Form 4473s that Cash Cow accepted in 2011 and 2012, noting over 50 separate instances where Cash Cow employees had failed to verify photo IDs or dates of birth, left parts of the form blank, provided incorrect information, failed to identify the firearm that was sold, failed to verify that an NCIS background check was completed, or failed to sign the form as required. The ATF also discovered that Alonso had, in 2011 and 2013, completed two Form 4473s for his own purchase of firearms and that he provided false information in those forms. Each one of these failures is a stand-alone violation of the GCA. *See, e.g.,* 18 U.S.C. §§ 922(m), 923(g)(1)(A) and 27 C.F.R. § 478.21(a), 478.124(c)(1), 478.124(c)(3)(i), 478.124(c)(3)(iv), 478.124(c)(4), 478.124(c)(5).

In November 2014, the ATF sent Cash Cow a "Notice to Revoke or Suspend License and/or Impose Civil Fine," listing the above findings as violations that supported

revocation. Cash Cow timely requested an administrative hearing, which took place on February 3, 2015.

During the informal hearing, Munz and Cash Cow were represented by counsel. Both an ATF officer and Munz testified, and numerous exhibits were admitted. During his testimony, Munz stated that he had a significant amount of past experience with ATF compliance requirements and ATF audits, and that he fully understood "the importance of compliance." He emphasized the importance of employee training, inventory control, and keeping "clean records." He stated that, when he purchased Cash Cow in 2007, he operated it with eight hand-picked employees, including the store manager Alonso. Munz stated that he was stunned when the ATF informed him of the allegations about Alonso's criminal activity. Munz noted the hours of training each of his employees had been given, and he pointed out that Cash Cow had previously been audited in 2010 by the ATF but no violations had been found.

After considering the evidence submitted during the hearing, and the arguments of counsel, the hearing officer issued a report concluding that Cash Cow had committed the alleged violations, except for two alleged failures in which the ATF argued that other Cash Cow employees must have failed to verify Alonso's photo ID. On March 26, 2015, the ATF issued a Final Notice that Cash Cow's FFL would be revoked, effective midnight on April 14, 2015.

Four days prior to the revocation taking effect, on April 10, 2015, Cash Cow filed a petition for judicial review in this Court. Cash Cow sought a temporary restraining order and a preliminary injunction against the revocation of its license, as well as an order

from this Court reinstating Cash Cow's FFL. Cash Cow argued that it had never "willfully" violated the law and that any violations were either unintentional or were committed by a "rogue employee" who it had since terminated. Cash Cow's Complaint was verified by Derek Munz.

The ATF has now moved for summary judgment in its favor, contending there is no genuine dispute of material fact in this case.

## STANDARD OF REVIEW

Under the GCA, "[t]he Attorney General may, after notice and opportunity for hearing, revoke any license issued under [18 U.S.C. § 923] if the holder of such license has willfully violated any provision of [the GCA] or any rule or regulation prescribed by the Attorney General under [the GCA] ...." 18 U.S.C. § 923(e). The GCA confers jurisdiction on this Court to review the revocation of a license *de novo*. "In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing." 18 U.S.C. § 923(f))(3).

"The *de novo* standard of review means that the ATF's decision is entitled to no presumption of correctness and that the district court may attach such weight, if any, as it deems appropriate to the ATF's determinations and decision." *Weaver v. Harris*, 856 F. Supp. 2d 854, 857 (S.D. Miss. 2012), *aff'd*, 486 F. App'x 503 (5th Cir. 2012) (internal citations omitted); *see also Wells v. James*, 4:14-CV-1239, 2015 WL 5164971, at *2 (S.D. Tex. Sept. 2, 2015) ("The ATF's determination is not entitled to any presumption of correctness.").

However, the standard of review here is limited. Section 923(f)(3) "does not call upon this Court to decide whether it would revoke the license in its own judgment, but whether all of the evidence presented is sufficient to justify the Attorney General's revocation of the license." *Weaver v. Harris*, 856 F. Supp. 2d 854, 857 (S.D. Miss. 2012), *aff'd*, 486 F. App'x 503 (5th Cir. 2012) (citing *Morgan v. U.S. Dep't of Justice,* 473 F. Supp. 2d 756, 762 (E.D. Mich. 2007) (quoting *Pinion Enters., Inc. v. Ashcroft*, 371 F. Supp. 2d 1311, 1315 (N.D. Ala. 2005)); *see also Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 494 (7th Cir. 2006); *Armalite, Inc. v. Lambert*, 544 F.3d 644, 649 (6th Cir. 2008) ("Because a single violation suffices, we need not scour each charge in the ATF's revocation notice.").

## DISCUSSION

"A license holder commits a willful violation ... when, with knowledge of what the law requires, it intentionally or knowingly violates the GCA's requirements or acts with plain indifference to them (*i.e.,* recklessly violates them). A dealer's repeated violations after it has been informed of the regulations and warned of violations does show purposeful disregard or plain indifference. There is no requirement that the violations occurred with any bad purpose." *Weaver*, 856 F. Supp. 2d at 857 (internal quotations and citations omitted). Accordingly, to establish that the revocation of Cash Cow's license was authorized by law for purposes of summary judgment, the ATF must demonstrate that the undisputed facts establish that Cash Cow was aware of its obligations under the GCA and that Cash Cow either "purposefully disregarded" or was "plainly indifferent" to those obligations.

By the statute's plain language, even a single willful violation can trigger ATF's power of revocation. *See Am. Arms Int'l v. Herbert*, 563 F.3d 78, 86 (4th Cir. 2009) ("[T]he government's burden does not require that the court sustain every violation in order to uphold the revocation. In fact, a single uncontested violation suffices to uphold the ATF's revocation decision."); *Armalite, Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir. 2008). In *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, Judge Hittner identified a number of factors "tending to establish 'willfulness' as a matter of law[:] (1) a licensee's proven knowledge of its record keeping obligations, (2) persistent failure to comply with the same or similar provisions, and (3) receipt of a warning letter advising the licensee that repeated violations of the regulations could result in the revocation of its license." 507 F. Supp. 2d 754, 762 (S.D. Tex. 2007) (internal quotation marks omitted); *see also Moreno v. Bureau of Alcohol, Tobacco, Firearms, Explosives*, 113 F. Supp. 3d 916, 923 (W.D. Tex. 2015). But the ATF is not required to issue warnings before a violation may be found "willful" and a license revoked. *Strong v. U.S.*, 422 F. Supp. 2d 712, 722 (N.D. Tex. 2006); *see also Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004) ("[A] single violation of the GCA is a sufficient basis for denying an application or revoking a firearms dealer's license.").

Cash Cow has never disputed that it did, in fact, commit the violations as alleged by the government. Instead, it contends that there is a genuine dispute of material fact as to whether the ATF acted properly in revoking its license. First, Cash Cow contends there is a genuine dispute of material fact as to whether it "willfully" committed the violations, describing the bulk of the violations as merely a "handful of paperwork violations," and

discounting the remainder of the violations as being those of a single "rogue employee." Next, Cash Cow attacks the legitimacy of the proceeding below, contending that the ATF has failed to meet its evidentiary burden because it relies on unsworn hearsay testimony from the informal administrative hearing.

## I.     Due Process and Evidentiary Arguments

The Court first addresses Cash Cow's complaint about the lack of due process in the proceeding below. First, Cash Cow contends that it was denied discovery and other procedures before the hearing. Next, Cash Cow contends that the ATF's witness in the informal hearing did not have first-hand knowledge of the events involving Alonso and that she instead offered only "unsworn, hearsay 'testimony' based on [her] recollection of someone else's reports." (Dkt. 33, pg. 25). Finally, Cash Cow urges this Court to postpone submission of the ATF's motion for summary judgment so that it may take depositions and conduct discovery about the ATF's investigation of Cash Cow and Alonso, contending "Cash Cow is still seeking its first opportunity to examine the actual evidence that ATF claims supported the revocation of its FFL."  Dkt. 39.

These arguments have been addressed in other cases. As Judge Hittner noted in *Arwady,* a similar appeal from an ATF administrative decision to deny the renewal of a firearms license, "it is unnecessary for a court to hold an evidentiary hearing prior to ruling on a summary judgment motion." 507 F. Supp. 2d at 758 (internal citations omitted). Further, "it is a court's own decision whether to receive evidence in addition to the administrative record." *Id*. (citing *Strong v. United States*, 422 F. Supp. 2d 712, 719-20 n.12 (N.D. Tex. 2006)). In *Arwady*, the licensee also contended that he should have

been allowed to conduct discovery in the proceeding below, and complained of the procedures the ATF followed. Judge Hittner concluded that the licensee was not entitled to a "formal, adversarial hearing," and that the ATF had "properly conducted the hearing." *Id*. at 760. Similarly, Judge Hittner noted that the Federal Rules of Evidence did not apply to the administrative hearing. *Id*. at n.8. Although Arwady urged the court to consider additional evidence, Judge Hittner observed that the decision whether to allow additional evidence was within the judicial discretion of the district court, and that a court should consider "judicial economy" when making such a decision. *Id*. at 760. *See also Weaver v. Harris*, 486 Fed. App'x 503, 506 (5th Cir. 2012) (upholding district court's denial of request to postpone submission of summary judgment so that licensee could conduct additional discovery on ATF materials and procedures).

In this case, the ATF has submitted the administrative record from the informal hearing. None of the exhibits in that administrative record were objected to by Cash Cow's counsel during the informal proceeding. Further, Cash Cow's counsel had a full opportunity to question the ATF officer at the hearing and to explore her admitted lack of first-hand knowledge and any possible deficiencies in her account. Significantly, Cash Cow's owner also took the opportunity to testify, at length, and to admit his own documents for consideration. Cash Cow does not now argue that any of the documents in the summary judgment record are not authentic or reliable, nor does it contend that they are not accurate copies of Cash Cow's own business records. In this particular case, the Court finds that the administrative record, which includes a transcript from the informal hearing, governmental records, and, most importantly, Cash Cow's own documents,

provides sufficient competent evidence to reach the summary judgment question as to whether the ATF's revocation of Cash Cow's license on the basis of willful violations of the GCA was proper.

## II. Did Cash Cow Willfully Violate the GCA?

Cash Cow makes two main arguments to contend it did not "willfully" violate the GCA. First, it argues that it should not be held responsible for Alonso's bad acts. Relying on its own past history of "years of exemplary compliance," Cash Cow points the finger at its former manager, stating the most serious violations were all "due to the criminal conduct of a single rogue employee who acted without Cash Cow's knowledge, who actively hid his crimes from Cash Cow, who was terminated immediately upon his conduct coming to light, and who was criminally prosecuted for his crimes." (Dkt. 33, pg. 4). Again, this is well-plowed ground. In *Arwady*, Judge Hittner rejected the argument that the license holder should not be liable for the failure of an employee to complete required paperwork, finding "Arwady is responsible for all record-keeping errors committed by its employees." 507 F. Supp. 2d at 763 n.12 (citing *Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 467–68 (7th Cir. 1980) (finding dealer's violations of GCA were willful because, "where ... the licensee is a corporation, it is chargeable with the conduct and knowledge of its employees.")). Further, the Court notes that many of the violations that were listed as the basis for revocation occurred *after* Alonso's misdeeds had come to light and after Munz had been contacted by ATF agents.

Cash Cow fares no better on its second point. It contends that the numerous record-keeping failures found by the ATF were nothing more than a "handful of

paperwork violations," and that such technical failures cannot justify revocation of its license. Again, the Court finds guidance in Judge Hittner's decision in *Arwady*: "The severity of record-keeping discrepancies plays no role in evaluating willfulness." 507 F. Supp. 2d at 762, n.11 (citing *Article II Gun Shop, Inc. v. Ashcroft*, No. 03 C 4598, 2005 WL 701053, *5, 2005 U.S. Dist. LEXIS 18873, at *17-18 (N.D. Ill. Mar. 25, 2005) (noting that case law does not support petitioner's notion that repeated inadvertent errors or technical mistakes should be exempted from the general rule that repeated violations satisfy the willfulness requirement) (citations omitted), *aff'd sub nom. Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492 (7th Cir. 2006)). *See also Weaver v. Harris*, 856 F. Supp. 2d 854, 858 (S.D. Miss. 2012), *aff'd*, 486 Fed. App'x. 503 (5th Cir. 2012) ("[T]he GCA does not provide a dispensation for 'minor' errors.") (citation omitted); *Augustson v. Holder*, 728 F. Supp. 2d 1279, 1286 (D. N.M. 2010) ("Because it is within the ATF's discretion to revoke a license for even a single willful violation of the GCA, seven violations is more than sufficient to warrant revocation.") (emphasis omitted).

Here, there is no genuine dispute of material fact as to whether Cash Cow, through Munz, was well-aware of the record-keeping and compliance requirements of the GCA. In fact, Munz stated that he had years of experience in complying with federal firearms laws and that he also assisted other pawn shops with their compliance requirements. Setting aside the spectacular failures and crimes committed by Alonso in February 2013, the Court notes that routine and thorough internal reviews and controls by Cash Cow would have revealed or prevented many of the other numerous problems found by the ATF. Further, even after the ATF informed Munz of its investigation into Alonso, errors

continued. In particular, the computer system that Munz designed to flag multiple handgun purchases so that the required report could be sent to ATF failed, and Munz candidly acknowledged that the system "[o]bviously, . . . it did not work . . . It sort of kind of worked, but it did not work 100 percent." Tr. 000537. Elsewhere, he acknowledged that required information had been left blank in many instances, making the firearms sold untraceable, stating, "They – there are a few in there that are blank, and you know, obviously, I – you know, that's not an excuse, sir, or a reason I can come up with. We totally dropped the ball on that check, and, and it fell through." Tr. 000557-59.

Based upon its review of the evidence in the record, the Court finds that there is no genuine dispute of material fact as to whether Cash Cow "willfully" violated the GCA and that the ATF therefore was authorized to revoke Cash Cow's FFL.

## CONCLUSION

The Court finds that there is no genuine dispute of material fact as to Cash Cow's claims in this case, and accordingly, the Court finds that the ATF's motion for summary judgment should be **GRANTED**.

Further, for the reasons stated above, the Court also hereby **DENIES** Cash Cow's Motion to Compel Production, Dkt. 39.

SIGNED at Galveston, Texas, this 23rd day of September, 2016.

_____
George C. Hanks Jr.
United States District Judge